for Dan Ryan Builders v. Crystal Ridge Development, Inc. May it please the court, my name is Averam Levikoff. I tried this case on behalf of the plaintiff, Dan Ryan Builders, in the district court. This morning on the way up here in the elevator, a lawyer looked at me and he said, so what kind of case do you have? I thought briefly and I said, it's a case in which justice was not done below. You know, I bet almost everybody representing an appellant would say that same thing. And it sounds like... Just like that doesn't tell us a lot about the case. It sounds platitudinous, but when you really step back and take a look at this situation, my client contracted to buy real property from a developer that was also an excavation contractor that held itself out as specialized in site development work. My client engaged that contractor under one or more written agreements to construct a major fill slope on the property so as to make six of those lots buildable. The contractor, according to the district court's explicit findings, did the work on that fill slope in a shoddy, inappropriate manner, utilizing poor construction practices. The district court found in several places in the district court's decision that the sole proximate cause of the failure of that slope was the poor construction practices utilized by the defendant. As a result of the slope failure, not only did the slope fail, but the slide substantially damaged the natural soils on that property. My client spent over $1.7 million to remediate the slope. Tell us about this gist of the action, doctor. And we recovered not... Frankly, I don't think I had worked with it too much before I got on this case. The gist of the action, doctor. Well, it's an interesting concept, misapplied, severely misapplied by the district court in this case. The correct analysis has nothing to do with the gist of the action, doctor. First of all, if I may, the district court reached out and took up that issue, even though that issue was never raised by the parties, never briefed, never argued. Now, we can debate all day long about whether that was appropriate to begin with or not. We argue that issue back and forth in the briefs. We tend that under the party presentation principle discussed in this court's recent Bund decision, in which Judge Wynn joined a majority opinion by Judge Davis, that under party presentation principles, that issue never should have been considered. The defendants argue under the antecedent issue exception to the party presentation principle, that that's an antecedent issue and the court could properly take that up. Well, however you resolve that interesting question, the real problem with what the district court did is it reached out into left field, took the issue, decided the major issue in the case on that ground without ever notifying the parties that it was going to bring that issue into the case and without giving the parties any opportunity to brief it, argue it, or otherwise develop it. Why didn't you bring a breach of contract claim? We did. We brought multiple breach of contract claims. A breach of the contract? That Crystal Regis breached a contract with the independent contractor? There were breach of contract claims pleaded in the complaint. If the court will look at the pretrial memorandum that is part of the issue, there's a distinct sentence contained therein which says that the defendants breached four separate written agreements. The district court discussed those breach of contract claims. Your Honor, I'm sorry. My hearing is not that good. Well, you and I are together here. I said the district court discussed the breach of contract claims. Well, the court discussed breach of contract claims having nothing to do with the slope failure. There were other collateral breach of contract claims. In fact, the most inexplicable thing about the district court's decision on the slope failure, which was the gist of the case, is the court decided that it didn't state a tort claim. That was a misanalysis, and I'll come to that. But having determined that it didn't state a tort claim because it theoretically stated a contract claim only, the district court then, without any explanation, utterly failed to consider whether damages should have been awarded for the slope failure on a breach of contract theory either. That's simply not explained in the decision. But the gist of the action, a sua sponte look of this complaint was about with the district court? Here's the point. Let me make sure. I thought you alleged tort type. We did, tort and contract, both. So the district court could have said no duty. At the end of that ballgame, but you say you alleged both, but the court sort of says, okay, we're going to look at the gist of the action here. The real problem with the court reaching out and taking up this issue, not raised, not developed, and not briefed, is it leads to misanalysis. That's the real problem. And I would point out that even in the Senny case, Judge Motz's decision. Like applesauce, Motz? Motz. Unfortunately, I don't have anything to do with applesauce. Your Honor can appreciate my name is abominated all the time. That's fine. You can call me, but I thought you might be interested. The point is, even in the Senny case, where the court did, under the antecedent issue concept, take up an issue not argued by the parties, the court gave the parties notice that it was going to do so and invited briefs. That was on the issue of the FCC arbitration ban. That's what the district court didn't do here. And the problem with not doing it is because there is no development. It leads to misanalysis. And that's exactly what we got. The district court essentially held as follows. There's a contract that calls for the construction of the slope. Therefore, theoretically, there would be a breach of contract cause of action, which there may be. But the court then says, consequently, there's no tort duty. That is not a correct method of analysis. Under West Virginia law, which governed the issue, the way to determine if there's a duty in tort is to apply fundamental principles that have been articulated by the West Virginia Supreme Court in case after case. Robertson versus LeMaster. Sewell versus Gregory. Lockhart versus Airco. The real test is whether the conduct of the defendant, if negligently performed, gives rise to a foreseeable risk of physical harm to person or property, and whether the harm occurred within the ambit of that risk. That's the test. And if the court will carefully scrutinize this gist of the action analysis employed by the district court, none of those principles are considered in the slightest. And if the court looks at any of the West Virginia cases that deal with the determining whether there's a duty in tort, it employs those principles. Syllabus points three and four in Sewell versus Gregory. The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? Now that test simply was disregarded in the district court's analysis of the case. And not surprisingly, the issue was never briefed and it was never argued. Had that test been applied here, look at what the issue would have been. This is a contractor that contracts to build a massive fill slope on property. Is there any doubt that a reasonable contractor undertaking that work wouldn't realize that there was a foreseeable risk of physical harm to the property and perhaps the people from that work? The slope collapsed, the property was damaged. Plainly, that's within the ambit of a foreseeable risk. So if the appropriate principles had been applied, the district court would certainly have come to the conclusion that this was a tort claim. It may also be a contract claim. Can it be both? Yes, absolutely. It can be both. And in this case, it's certainly. Tort and contract. When you have a contract in West Virginia, you can also sue for damages in tort. Absolutely. There is no question. In West Virginia, unlike any other jurisdiction I've ever heard of. Absolutely. That is the case. The Hornbook definition of a tort is a civil, non-contractual wrong. The duty under West Virginia law, as I have just read from Sewell, is determined based on whether or not there is a foreseeable risk of physical harm to person or property from the defendant's conduct. If the answer to that is in the affirmative, it gives rise to a tort. There need not be any duty for a tort claim. That gives rise to the duty. That is the test for the existence of a duty. And I could read the syllabus point again, that that is precisely what it says. The test for duty is, is there a foreseeable risk of physical harm? The West Virginia court has held that over and over again. And as an old torts lawyer in West Virginia, even though I come from Pittsburgh, it would be inconceivable to me that the West Virginia Supreme Court of Appeals, if confronted with a case like this, where a contractor engages to build a fill slope on property that fails, it would be inconceivable that that court would not hold that that gives rise to a cause of action in tort for the physical damage to property, even though it may also give rise to a, a cause of action for breach of contract. And where is that case? Sewell versus Gregory. That's cited in the briefs at great length. It's a 371 Southeast second 82. I might add that the court uses, utilizes that same principle in syllabus 0.7 of the Lockhart case. But now Sewell's, the plaintiffs were not in contract with the builder in that case. Indeed. And what they were, the plaintiffs was the second purchases of a home. It's a remote purchase. That's a different case. Well, it is. It's factually different, but look at what the Somali factual difference. That means they're not in contract, but look at what the Supreme court says about contractual privity. The principle that if you have a contract and that covers it, you don't have a tort claim. That is not the holding of that case. I know it's not the holding of that case. We're trying to get you to give us a case where that is the whole thing. What Sewell said that there is no case that holds that way, because there is no West Virginia case that says simply because there's a contractual relationship that a for sure. Okay. Even though there's a contractual relationship here, there's a tort tort liability as well. That's the case we want you to say. Well, I don't know that there's a case that says that, but what Sewell versus Gregory Gregory clearly says clearly is that the existence of contractual privity is inconsequential to the issue of whether there's a duty in tort. And the court says what is consequential to whether there's the existence of a duty in tort is whether the consequence of negligent performance of the defendant's conduct is a foreseeable risk of physical harm to person or property. Very forceful. And I'm trying to be with you and trying to understand you. But my, my belief is that Sewell is not helping you except for the general proposition, because the position of the parties in those case did not present that issue to West Virginia. Those parties were not in contract. There was no contract in Sewell. And the court says that that's inconsequential to the analysis. Because there's not an issue in the case. Lockhart and Airco is another situation. Lockhart is your next case. That's the case. Lockhart is, is a, is a family that contracts with a furnace, an HVAC contractor to put in a furnace. They come to do the work. I assume that they disconnected the heat while they were doing the work. The fellow who lives there gets sick and dies of a pulmonary condition. The wife sues the contractor with whom they clearly had a contract for wrongful death, alleging that negligence in turning off the heat while they were doing their work caused his death. The Supreme court. Lockhart say there's no separate duty apart from the contract there because she couldn't show the duty. Here's what the court says. If you read the case, the court's opinion says read it. That's why I'm asking you that question. I've read it too. And I think it would be good form to sort of think we have read the case many times. I've read it many times on the issue of whether there's a duty of court. You accused us of not reading. The court says very distinctly that because the illness and death is not a performance, therefore there is no duty in tort. The court did not say simply because there's a contract, there is no duty in tort. And that court has never said that in West Virginia. So the court didn't say there is no separate positive legal duty apart from that in contract code to this person. What the court did is rejected the tort claim. It didn't say that you say the court did not say that in that case, the court did not hold that merely because of the existence of a contract, it negates a tort duty. I understand it didn't hold that. I'm just saying in that case, for the proposition that you're stating it for, I've already said I'm not bought on this suitcase because there was no contract there. Now we're on lockout. And now I've got, he says there was no tort duty here. And then the court essentially holds there's no separate duty here. Positive legal, positive legal duty. Because his death was not foreseeable. That's the holding of the case because his death was not a foreseeable consequence of the alleged misperformance. The court says there is no duty in tort because that is the test. This is an issue that could be certified to the West Virginia Supreme Court. See if they agree with you on this. I suppose it could. And if the court certified the issue, I'm willing to bet dollars. If it could then, because if it, if it looks to us the other way, and you think West Virginia holds this, that maybe something like this, the West Virginia court will say, we are different from every other jurisdiction. We don't follow the normal process here. We think that you can bring a tort action as well as a contract action on the same set of facts. I'm pretty sure that I have not found a case through research in any jurisdiction, which says simply because there's a contract and simply because there may be a contractual cause of action, that that a for sure I negate the court duty. I've never seen that held by any court. Okay. Thank you very much for your argument. You have some time reserved for rebuttal. Good morning. Good morning. Please support. My name is Tiffany Durst and seated at council table with me is my Ted Taylor. I am sorry. I had a moment there. He represents Horner brothers. And by agreement prior to this morning, we have agreed that the time allotted for the appellees, I would address all of the arguments as we submitted a joint brief to this court. I wanted to start off by addressing a couple of the questions that your honors had of Mr. Lavikoff. Judge Moss, you had asked about whether there is a case that in West Virginia that relates to a breach of contract claim or excuse me, a negligence claim in the context of also starting a breach of contract claim. We believe that there is, we believe that the Lockhart opinion addresses that. In fact, your honors in that opinion, which was a 2002 opinion, our West Virginia Supreme court of appeals actually created two new syllabus points, syllabus 0.9 and syllabus 0.10. And if I might, and I know the courts have read these, but Mr. Lavikoff just said that case didn't stand for that proposition. He's is, he says, it doesn't say you have to have a separate positive legal duty. Simply kept using the word simply because. So now address his concerns because that's, I mean, I like when cases come where we can identify where the disagreement is. Yes. He has strong disagreement as to what that case is. So let me address that. And, and just briefly as, as your honors know, that was a case where there was a contract between Mr. and Miss Lockhart to have an heating installation unit installed in their home. So there was a contract. What ended up happening in that case was the heating unit was disconnected for points in time throughout the installation of the unit. Mr. Lockhart had ailing medical conditions in the first instance, developed pneumonia and ended up dying. His widow brought a claim against the, the heating installation company alleging wrongful death. She did not assert a breach of contract claim in that case. What she alleged was essentially negligence claim under the wrongful death statute. There was a foreseeability issue addressing it with that opinion was authored by justice Maynard at the time. There was a foreseeability issue addressed as to whether this contractor or any contractor for that matter, whether it would be foreseeable for them to, to know that by installing the heating and air conditioning, that this individual would develop pneumonia and die. So I will concede with Mr. Levicoff that there was a foreseeability issue, but the West Virginia Supreme court went further than that. They addressed the nature that there was a contractual relationship between these parties. And as I said, created two new syllabus points, Syllabus 0.9 says tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by the law because of the relationship of the parties rather than from a mere mission to perform a contract contract obligation and action in tort will not arise for breach of contract. Unless the action in sport would arise independent of the existence of the contract. They went further in syllabus 0.10, a tort, although growing out of a contract must nevertheless possess all the essential elements of a tort. In this case, judge Keely at the district court level examined the gist of the action doctrine. And specifically going back to another question you had judge when, I don't know if there's some confusion. There were six contracts in this case. Mr. Levicoff referenced four in their complaint. And in the amended complaint, the original complaint was filed in late 0.9. So he says he's brought a contract action. There was a breach of contract. I think that's what he says. Yeah. Both tort and contract. And I will concede there was a breach of contract claim asserted in both the original and the amended complaint. However, the complaints that were filed on behalf of Dan Ryan builders referenced four contracts and had these contracts attached the law purchase agreement, which was the first contract that started all of this, the trade contract with Lang brothers. And that trade contract was for some foundational work, some crack proofing, that type of thing. The acknowledgement, which later addressed Mr. Lang's agreement to fix some roads within the development and the first amendment to the lot purchase agreement. And as the brief indicate, and it was kind of colloquially referred to at trial was that was the divorce agreement. That's when things started to go bad. Those are the only four agreements referenced in the plaintiff complaint and amended complaint. The, what we're called at trial, the fill slope contracts, the contracts, the individual contracts with Mr. Lang and his company to construct the fill slope. Those were separate contracts. Those were not part of the complaint or the amended complaint. And judge Keely did address that and note that in her opinion, specifically in the joint appendix, which I know was quite large, but at 2373, where she noted that the fill slope contracts were conspicuously absent from the plaintiff's amended complaint. Well, I suppose Mr. Levenkoff is going to say, I didn't sue for breach of contract with those contracts. I sued for the other four. Well, and then that goes to the argument judge went in this case that they're saying that judge Keely inappropriately applied number one, the gist of the action doctrine. But part of their argument before this court is that she shouldn't have found against them on the breach of contract for the fill slope contracts because they argue it was tried by consent and some other issues. But the issue in this case is that the fill slope contracts were clearly entered into long before the complaint was filed in oh nine before the amended complaint was filed in 2010. The other salient point about the fill slope contracts before I address a couple of the other issues is that after, and remember this was a bench trial. This was not a jury trial. This was a bench trial before judge Keeling. It was a five day trial. We finished the trial and then had to wait on the transcript. And she directed the parties to submit post trial findings, the fact conclusions of law. She entered a paperless order that actually directed two separate submissions. Dan Ryan builders for whatever reason, submitted one post trial filing that was 70 pages long. That's also part of the joint appendix. I'm your honors in that 70 page post trial submission. They did not make any claim whatsoever for breach of contract damages arising from the fill slopes. None. What they said, I can get to it. It looks to me. The trial judge could have just said no duty. You lose with regard to applying the, just to the action doctrine. Just in general, but the action doctrine does look to me like regular. I mean, they call it a funny thing is an unusual thing in, in West Virginia. It's very different from the law everywhere, which is, and I would agree. That's at least been my experience is that if, if the there would be no independent obligation, for instance, to construct a fill slope, irrespective of this contract, you can assert a negligence claim because the duties, the party's rights responsibilities are confined and defined by the terms of that contract. Let me, let me see if, sorry, no, you go ahead. No, you're yours. Go ahead. You agree that because you talk about Lockhart, that in terms of a tort, you said, unless that duty would exist independent of the contractual obligation, correct? Yeah, that, that is what the court in Lockhart has indicated. Judge Gregory. So you, so you would agree that even though the gist of the actual action file might be contract, it doesn't mean that it could not also be a tort in some instances. I don't, that standard is metal independent of, I think there, there is a specific test and, and subsequent to Lockhart in 2013, the West Virginia Supreme court addressed the gist of the action doctrine a bit further in Gaddy versus Bowles rice. And they established, and I will concede as well in Lockhart, they don't use the phrase gist of the action. But when the Supreme court of West Virginia decided the Gaddy decision in 2013, they cited Lockhart among other cases and created a test with regard to factors that the court looks at to determine whether gist of the action doctrine is applicable to preclude a negligence claim that would be based on the same contract. And there is a four factor test. And it's, if any one of the four factors is present, then gist of the action doctrine is applicable. And those factors are whether the liability arises solely from the contractual relationship of the party. When the alleged duties breached were grounded in the contract itself, where the liability stems from the contract. And when the tort claim essentially duplicates the breach of the contract claim, or where success of the tort claim is dependent upon success of the breach of contract claim. In this case, remember there are four contracts. And as you know, judge when indicated and asked Mr. Levicoff, there was a breach of contract claim asserted, but only with regard to certain contracts. They did not assert a breach of contract claim with regard to the field slopes. However, that doesn't preclude gist of the action doctrine to Dan Ryan builders negligence claim for construction of the field slope, because these factors that the Supreme court has enunciated in Gaddy, we believe clearly have application because, but for the field slope contracts, there would have been no obligation, no duty, no responsibility on the part of, of my client to construct that field slope in the first place. The second prong that you talked about where the duties on the, uh, uh, were grounded in contract itself. And you're saying these duties are gone, are grounded in contract. And therefore the duties were grounded in the, the, they were called contract with independent contractors, but for purposes of the trial, they refer to, and then the briefing they refer to as the field slope contract. And I think that's important to remember, because as I said, there were six contracts, um, at issue in this case, um, between Dan Ryan builders and my client, there were separate contractors. Some separate contractual issues between Dan Ryan builders and Horner brothers engineers, which are not at issue in this case. Um, but we believe that, um, judge Keeley appropriately applied the gist of the action doctrine in this case. Another, before I get onto another couple of points, I did want to also, um, reference, uh, Mr. Levicoff had cited, um, this court's opinion in the bun versus Oldendorf case, um, with regard to the party presentation principle. I think that case is factually different from this case. Um, that case was a jury verdict. It was a jury trial. And the issue was whether the jury verdict could be reversed based on a legal theory that had not been presented at trial. This is a bench trial. The judge under rule 52 has to make findings of fact and conclusions of law. And we believe that there's ample authority both from this court and from the United States Supreme court, um, that when an issue or claim is properly before the court, um, even if a party hasn't briefed it, that's the governing law. So the court, particularly in this case where it was a bench trial under rule 52 and judge Keeley had to make findings of fact and conclusions of law had authority to apply, to investigate and apply the gist of the action doctrine. Um, so I think that reliance upon Bunn versus Oldendorf, um, is a bit misplaced in that it's a factual, um, dissimilarity between this case and the facts of that case. Um, can I just ask you to be sure that I understand your argument and what happened below, because you're so into this case that you're way into the facts and the meetings and everything. There were four contract claims pled in the complaint. Is that correct? Yes. The district court addressed all four of them. Yes. My, yes. She addressed, um, all four of those contract claims. Okay. She said with respect to the tort claims that were alleged from the same set of facts in the complaint that they, that she was not going to address those because they were contract claims and they were precluded by application of the gist of the action. She calls it the gist, but the basis for that is that they are actually contract claims and she's addressed the contract. There are two fill contracts that were not pled in either the complaint or the amended complaint. There's no contractual claim made with respect to them. Correct. The district court does address them and she finds, and she rejects them finding that they weren't, I think she finds they weren't pled. She could have ended there. Yeah. She found language that they were conspicuously absent from reference to the complaint or the amended complaint. And that in itself is a sufficient basis to reject them, right? Yep. We believe so, Your Honor, for a number of reasons. But there are other reasons for rejecting them according to you. And the other reason is that they are contract claims again, and that they weren't specifically alleged. You don't know which of the fill claims they're talking about. They never have made that clear. Is that correct? They did not, um, Judge Moss. In fact, um, Mr. Levicoff referenced a, a loan reference in the joint pretrial memorandum with regard to the fill slope contract. That reference was actually, it was actually by us. Um, and what ended up happening is at trial, there was no argument with regard to a breach of these fill slopes. And the post trial submission, there was no argument with regard to a breach of the fill slopes. And there was, they accounted, Dan Ryan accounted in their pretrial. I see my light. Okay. Um, they accounted for every penny of every damage that they were seeking. In their post trial submission, there was not one reference at all in 70 pages that they were seeking damages for breach of the fill slope contract. Okay. I think we've got that part of your fill slope argument, but I thought you had another part of your fill slope argument. And in other words, um, your colleague on the other side says, look, okay, I'll accept everything. The district court said for purposes of this argument about contracts rather than torts. And those first four things were contracts and they didn't give rise to a tort claim. But after all these fill slopes were contracts too. So why don't I get any recovery here? And your first argument is they weren't pledged. Do you have another argument? Well, and there was no, no evidence introduced that trial with regard to the breach of the fill slope contract. And I guess you said that they, in their post trial, um, pleadings, they don't make any specific claim about what injuries arose. They did not. And, and just briefly the, the way that this, the post trial submissions happened, I think it's important for purposes of at least our position. As I indicated in a paperless order, judge Keely directed the parties to submit separate briefs, the way she wanted them for the post trial submissions. Certain briefs. What is the, you have told us that what's the significance of that? Well, and here's, here's what happened. Um, for whatever reason, Dan Ryan builder submitted one 70 page submission, right? We submitted our submission as we were required to within the page limitation on the same day. In our first submission, we noted simply that there, the breach, the fill slope contracts were never pledged as a breach of contract claim. We had the opportunity. And the reason she set it up, I believe as the two separate briefings is so you could respond to the other parties post trial submission. After we received Dan Ryan builders, 70 page post trial submission that again, never mentioned anything about a breach of contract claim for the fill slope contracts. We didn't mention it again either because it wasn't raised in their post trial submission as, Hey, we're seeking contract damages for breach of those fill slope contracts. So to now go back and say that they somehow should be able to assert that as a claim. Um, it, it prejudices my client in that we didn't have noticed to be able to brief them. I was in the complaint. You didn't have noticed in there. It's a trial and you didn't have noticed in post trial. Correct. Is that what you're saying? Correct. All right. How could that be? I thought the whole case was about the slope bill. That was the problem. Well, the case was about the slope bill judge Gregory, but there was also these negligence claims that were being tried. And the issue with regard to how the fill slopes were constructed was inherent in the negligence claim. There was also claims against Horner brothers. It doesn't matter if the evidence was, was pitched in a, in a, to prove negligence. Okay. Let's assume that's correct. The gist of the action is not torn, but it's still evidence related to the duties and the breaches alleged and is argued. And the damage that flowed there from related to this, the field slope. That was the whole case. It was the case. It wasn't because I didn't understand it that way. I thought there were all these other things people did. There were other things as well. But the, the part of the issue in the case was a spill slope behind lots two through seven. There were other issues with regard to the soil, the sediment pond, the soil. I thought that those things led to the fill slope. No, those were independent. But I thought that the fill slope whole problem came later on. No. The first crack. And I can tell you when the first crack developed in the. Well, maybe I can. The first crack developed in 2007. And the thereafter, Dan Ryan builders hired CTO engineering to come in, investigate it. They determined it was differential settlement. And then later there was a further, there was further evidence of problems with the fill slope. So the first notice was a crack in the foundation, the foundation slab of lot number seven. That's how this kind of started to develop. But there was testimony and evidence with regard to other areas, just behind this spill slope for lots two through seven. There were other claims. That was a problem from the very topography that drove the question of whether or not you could develop it and you would need a slope to put proper development. There was a cut and fill. There was a cut on one side and fill in the other. All along. The issue was that the slope was not properly foundation for it. And that's the whole case really. And I see my light on. That was the whole case. The whole point was they, they, they, you know, pardon the vernacular. They messed up on doing that. And it went all through there. No, you do it this way, do it that way. And finally, somebody said, no problem is the soil. You need to do that. That was the whole case. That was a very large portion of the case. Judge Gregory, because there were other issues. They had issues about an easement, the entranceway. I agree. Soil and sediment ponds. But those were peripheral compared to the slope being really, that was the, pardon the pun, that's the gist of the contract case. And it was the gist of the contract case. And those fill slope contracts were never pledged. Yeah, but they were argued and they were litigated. Well, but here's the thing, Judge Gregory. And you never objected. You said, objection, that's irrelevant because, you know, I'm sure you think maybe I'm a lie dormant because it's not pledged. But it was litigated for five days or so. It was litigated with regard to the negligence claim. As the trial proceeded, there was no notice that they were asserting a breach of contract claim for those fill slope contracts. At no point in time did they move to amend the complaint to assert a claim. What defense were you deprived of in thinking it was negligence that you had to defend against that you would have done otherwise if you thought it was negligence? Well, there were issues with regard to who was responsible for getting what were called the cross sections, whose responsibility that was. Horner Brother prepared the slope cross sections. We didn't hire Horner Brothers to do those. So there may have been a number of issues the way the case may have proceeded differently. And I actually, I was, we were all the trial attorneys in this case. That's a little bit different than some of the arguments the court had here this morning. But parties are entitled to, you know, fair notice. And the question you asked Judge Gregory is that with regard to, that it was tried by implied consent. I mean, this court in 1990 and Elmore versus Corcoran said a court will not apply consent to a claim because evidence relevant to one plea, properly pleaded issue incidentally tends to establish another claim. I mean. I agree. No, the key to that, that opinion is incidental. And you can't anyway, in good faith say that slope construction was incidental at all. In this case, that's an opposite law that you're citing there because this is not, and that's why I said from the very beginning, it was the whole basis for the loss. That's what caused Ryan Brothers to spend, as they, you know, allege and they argue $1.7 million because someone told him that this slope was done appropriately. And it turns out based on their evidence, they would say it was improper and it should be on the contract, not court. And that was litigated. And I will conclude with this judge Gregory, unless there's another question. The only point that I would make with regard to that, if that was the whole case, Dan Ryan had the opportunity to put that before the district court in multiple, on multiple occasions through multiple different avenues in their pleadings filed before trial during trial and in their post trial submissions. And they did not do so. Not that talismanic because they can be conformed to the way the case was tried. And we know that. Well, but they can't pursuant to case law from this court. They can't be conformed after a judgment. And that's essentially what Dan Ryan is asking this court to do is to conform the pleadings in this case. Now, after the judgment that judge Keely entered, because it didn't turn out the way that they had hoped that it would. Thank you. But please, the court, the district court at. J. A. 2373 in a footnote in her memorandum. Notes that the contract with independent contractors. Which is what my opponent calls the still slope contract. Wasn't mentioned in the amended complaint. But as the court has already observed. That issue was clearly tried by consent. First of all. My opponent. Is the one that informed the district court at the pretrial conference. That the slope was built under the contract with independent. Contractor Al Reed. From pages four and five of the Apple. He's brief. At the final pretrial conference in this matter. Counsel for laying defendants. Pointed out that the obligation. To construct the fill slope at issue. Arose out of the fill slope contracts. Why didn't you include it in your pleading? Well, because. That was years earlier. And a different lawyer prepared it. And he prepared it the way he prepared it. But under federal practice. Pleading. He prepared the amended complaints. I did not draft the amended complaints. But we sure enough made clear. That those contracts were in the case in the pretrial. The joint pretrial memorandum. It was pointed out. I kind of wish the law was. The way it's been articulated to some degree. I'm not sure that's it. I've seen a bunch of cases come up here. If you don't plead something, you lose. And I mean, that's pretty strict stuff. And I see a lot of people look like to me it's unfair. That that's held pretty. Tightly and particularly after judgment. I empathize with any counsel who takes the case on. And you're looking at a complaint. And he says, oh, my Lord, why is it not here? You've got four of the six contracts. As I understand it there. And the two. That you need are not in it. Well, no, they are. They were admitted into evidence. Without objection. They were not being a breach of that. They were not. How do you know how to try a case on the other side? If someone doesn't say you breach this contract. That's why we have a joint pretrial memorandum put together by the parties. And that's why we have pretrial conferences. I'm telling you, I don't know if it works that way, but maybe if it does. I would like for the doors to be open. Let's just find out what this is about. I don't think that's the way it works. Would have been nice if it was in the complaint. You are tied to certain pleadings. And one of the main things, if you don't tell someone, this is the contract and this is the breach. That's pretty simple stuff to do. And then come in and say, oh, well, we've been talking about this the whole time. So, therefore, that's included. If the trial record is 2,000 pages of testimony, 1,500 of them were on those contracts. I'm talking about something very simple here. Simple proposition is a contract. And the very one you allege to be breached is not pled. But it didn't plead it. But I'm pretty sure that 1,500 pages of testimony in the trial record plus the defendant mentioning it at the pretrial conference and putting it in the memorandum is trial by consent. What about in your post-trial? Did you draft the post-trial memorandum for the district court? Well, now, let me. Yes, I did. You did. So that wasn't a prior counsel. No. Was that a cert of a contract claim for these two fill contracts? I'm pretty comfortable that it alludes to breach of contract claims. I will say this. No, no, no, no, no, no. There's six breach of contracts. Six breach of contracts. It could have been more explicit. But if I look at it, I will find a reliance on the two fill contracts. Is that right? I'm not sure. Okay. But I will say this. There's an explanation for it. We were not invited to delineate in that post-trial submission the specifics of claims. It was not findings of fact and conclusions of law. That was invited as in lieu of an argument on the evidence. So we were not instructed to delineate precisely in that document what claims were being pursued. As a matter of fact, in coming up with the gist of the action ruling, the court determined that the nature of what you were complaining about, the slope, was a contract. That is correct. Surprisingly enough. But I'm not giving up on my tort claim just yet. There was much debate about Lockhart and what it holds. I think you're giving up on it right this minute in this court. Maybe you can finish your sentence for us that this is a time limitation. Okay. We'll ask the clerk to adjourn court, and then we'll come down and greet the lawyers.
judges: Diana Gribbon Motz, Roger L. Gregory, James A. Wynn, Jr.